## DOWNTON v. YAEGER MILLING CO.

*(Circuit Court, E. D. Missouri.  ——  1880.)*

PATENT—MILLING PROCESS—USE OF ROLLS.—A patent for the manufacture of middlings flour by passing the middlings, after their discharge from a purifier, through or between rolls, is void for want of novelty and uncertainty, when such rolls are inadequate to produce the result described.

*W. G. Rainey* and *George Harding*, for plaintiff.

*G. M. Stewart* and *F. W. Cotzhausen*, for defendant.

TREAT, J., (*orally.*)  I am prepared to announce my conclusion in the case of *Downton* v. *The Yaeger Milling Company.* This case was presented at great length last spring, and it was announced to counsel at that time that if the court was compelled, as matters then stood, to decide the case, it would have to decide it in a certain way, but it would be more satisfactory if on certain points it could be more fully presented. That has been done, and very ably.  One of the points as to which the court was troubled was whether, under the existing state of the art, this being a process patent, there was any novelty in it.  Second, was the patent itself sufficiently specific in its terms to make it practicable, or, in other words, patentable in the form pursued.

It is not proposed this morning to go through the milling literature with regard to these matters, as the various stages of all the matters involved were fully considered at the time of the hearing of the milling cases before Judges Dillon, Nelson and myself.  We were then very fully instructed as to this new process, and also as to the state of the art when the new process arose, and the conclusions announced in that case are very familiar to the counsel in this case, and to the milling public generally, by this time.

Now the mills using this new process interject rolls at various stages in connection with grinding, and, after purifying, regrinding the purified middlings.  Counsel were asked whether they construed this particular patent as covering *any* use of rolls on purified middlings at any stage of the successive grindings, or whether, under their construction of the

patent, it was a use of rolls, one or more, at a stage intermediate the first and second grindings. Counsel were understood to say that the interjection of such rolls at any one of these successive stages was within the terms of the patent. The importance of that, if the testimony is understood, relates to the question of infringement.

There was a controversy at an early stage of this case, growing out of the transactions between Downton, Allis & Co., of Milwaukee, and this defendant, Yaeger. Judge Dillon and myself disagreed in opinion with regard to the effect of the paper transactions involved, but his ruling with regard to the matter was necessarily the ruling in the case. He held that if there was an infringement of this patent then the defendant must answer, except as to the two chilled iron rolls interposed between the first and second grindings according to the terms of the patent, because Allis & Co., who were to some extent assignees in this matter, made those rolls according to Downton's description, Downton himself superintending the whole matter and putting them in the mill; the contention being on the part of Downton that he informed these parties who had bought these rolls, which came under a subsequent patent, that whilst he put them in they must give him a royalty under his process patent, and hence any use of the rolls by those parties did not exonerate them from a royalty therefor. Judge Dillon and I concurred as to those two; said they were supposed to have been put there for some purpose. They were put there by the plaintiff, and under his very patent, and if it is said that they were put there merely to clog the machinery and for nothing involving a purpose, such a proposition cannot be maintained.

Now the court is brought, for the purposes of this case, to the construction of this patent. It has been read and reread very carefully. If there is anything in it that is patentable, and involves novelty, it is not the use of rolls at every stage of this process—for all the Minnesota mills had been using it before, and in Europe and Missouri the same thing had been practiced for a long series of years—but it was the interjection of rolls between the first and second grindings, whereby

certain effects would be produced; that is, such use flattens the germ or embryonic part of the berry, and also the pellicle, by a crushing instead of a grinding process. It is very obvious to any one who has looked into this subject that if this grinding process is continued, whereby all the matter of the berry, including the germ—which seems to be the most obnoxious part of the whole—is mixed, then, instead of getting a first quality of flour, you have flour that is somewhat inferior in its character; for this waxy germ, in itself, has no especial nutritive property, but damages the flour through various causes. Hence, if you can take that out in the first instance, so that it shall not be ground into the body of the flour, it is certainly a most beneficial effect. To do it you must crush, not grind, for this little embryonic particle is so very minute that, unless you flatten it, it may, under trituration or grinding, pass into the middlings, and if you grind the middlings it will go into the body of the flour. So that the true construction, and the only construction, that will uphold this patent is the interjection of those rolls between the first and second grindings of the purified middlings. By that means the fluffy matter would be thrown off, leaving the tailings to be operated upon thereafter.

Then comes the next question: If that be the true reading of the patent, did this defendant use anything but the two chilled iron rolls at that stage of the process? The evidence is very uncertain on that point. Some say that under the Wegman patent porcelain rolls were used at various stages. But no matter as to that. This question is one to which the court asked particular attention, namely: here is a statement that by the use of rolls in a particular stage of this process certain beneficial results can be had; that is, a flattening of the germ so that it will not pass through the bolts. Now is that to be construed in this way; that any device that might at any time thereafter be had, whereby such a result may occur, is covered by this patent? It seems that anterior to this patent Mowbray and others had been using rolls, and in that very stage of the process, but the contention was that the particular rolls that they were using did not effect the

end to the desired extent, and hence, subsequent to this process patent, it became necessary to have some rolls invented which would effect the end.

Now, it is an elemental proposition as to patents that they shall be so clear that by ordinary means they can be worked out by a person skilled in the art. It is clear that this patent could not be operated by any method until some person invented rolls, which, while they should not be corrugated, because that would be as bad as the mill-stones in triturating, but should be smooth, and yet have sufficient grip and be of sufficient hardness; and that was not all, they must have the same diameters and work with equal speed, instead of differential speed. Neither of which was suggested in the patent.

To summarize, the claim of the patent is specific: "The herein described process of manufacturing middlings flour by passing the middlings, after their discharge from a purifier, through or between rolls, and subsequently bolting and grinding the same for the purposes set forth." Those purposes, as the specification states, are mainly for flattening the germ. That object was effected by the interposition of rolls at that particular stage of the process. Rolls at other stages of the milling process had been previously used, and even rolls by Mowbray at that particular stage; hence, if the patent is to be construed by its terms as covering the use of rolls at any stage of the milling process, it had been long anticipated prior thereto. If it is to be restricted to the use of rolls at the particular stage mentioned, then, so far as this case is concerned, the plaintiff is estopped, because he himself, as heretofore decided, placed the only rolls used at that stage in the defendant's mill.

On the other hand, irrespective of the question of estoppel, if the patent is for a process to be effected without any known means of accomplishing the result, but requiring inventive faculty, whereby rolls to accomplish the purposes, and their modes of operation, were to be determined by new inventions or discoveries, then the patent does not furnish to any one, as then skilled in the art, means whereby the bene-

ficial end could be accomplished. No one in the then existing state of the art could, by the use of any rolls known, or by any modes of operating the same, have effected the designed end. Consequently, to uphold this patent for a process which would have been ineffective without some inventions thereafter had, would be to block the path to all future progress in the art of milling.

The necessary result is that I dismiss the bill, the patent being void for want of novelty, and uncertainty.